IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiffs,<br><br>vs.<br><br>MARCUS KIM REMUS, and SHAWN THOMAS BROOKS,<br><br>Defendants. | 4:17CR3125<br><br>FINDINGS, RECOMMENDATION AND ORDER |

The defendant, Shawn Thomas Brooks, moved to suppress his historical cell site location information (CSLI) obtained pursuant to a Rule 2703 order, and statements he made to law enforcement during a custodial interview. (Filing No. 43 and Filing No. 68-1). Brooks also filed a motion in limine requesting the government be prohibited from introducing evidence regarding Brooks' alleged or admitted illicit drug possession and/or use. (Filing No. 45). For the reasons discussed below, I recommend that the motions to suppress should be denied, and I defer to the district judge to rule on the motion in limine.

BACKGROUND

On December 30, 2016, the Lancaster County District Court granted an Order pursuant to 18 U.S.C. § 2703, requiring certain electronic communication service providers and/or remote computing services to disclose records and other information described in an attachment to the Order.

The district court found the government had "offered specific and articulable facts showing that the records or other information sought are relevant and

material to an ongoing criminal investigation…" (Filing No. 68-1 at CM/ECF p 8). Pursuant to that order, the named companies provided the government with historical cell site location information and other data for communications made in the area of six unsolved robberies between November 29, 2016 and December 28, 2016. The application of the State of Nebraska to obtain CSLI alleged that the same unidentified suspects may have been involved in each of the robberies, as they wore similar clothing, displayed a similar weapon, and had similar features. Filing No. 68-1 at CM/ECF p.4).

Brooks was arrested on January 6, 2017, and he was subjected to a custodial interview by officers of the Lincoln Police Department.

On November 20, 2017, the government filed an application for an order pursuant to 18 U.S.C. § 2703, requiring Cellco Partnership d/b/a Verizon Wireless (Cellco), a cellular service provider, to disclose certain records and other information pertaining to a specific telephone number. (Exhibit 1 p. 1-5). The application alleged that the government was investigating a series of violent armed robberies of businesses that participated in, impacted, and affected interstate commerce and federally insured banks in Lincoln, Nebraska, such robberies occurring between December 26 and December 30, 2016. The application further alleged that a fingerprint was located on a plastic bag dropped during a robbery. The fingerprint matched Marcus Remus, who identified his accomplice as Shawn Brooks. (Exhibit 1, p. 3). Remus consented to an examination of his telephone, which contained logs and text messages indicating communications with a specific phone number. That number matched the contact telephone number Brooks provided to the Lincoln Police Department in October 2016.

On November 20, 2017, the undersigned magistrate judge issued an order requiring Cellco to disclose to the United States certain information pursuant to 18 U.S.C. § 2703(d). (Exhibit 2, p. 1). The undersigned magistrate judge found that the United States had offered specific and articulable facts showing that there were reasonable grounds to believe that the records or other information sought were relevant and material to an ongoing criminal investigation. Id.

On January 17, 2018, Brooks was indicted for violations of 18 U.S.C. § 1951, 18 U.S.C. § 924(c), 18 U.S.C. § 2113(a), and 18 U.S.C. § 2. (Filing No. 19 at CM/ECF pp. 1-4). Facts relevant to Brooks' motions to suppress and motion in limine will be discussed in more detail, below.

ANALYSIS

1. Motion to Suppress CSLI

On July 30, 2018, Brooks filed a motion to suppress CLSI Data, including any evidence gathered from the government's acquisition of his CSLI following the order of the Lancaster County District Court. (Filing No. 68-1 at CM/ECF pp. 1-11). He argued the information was obtained in violation of his Fourth Amendment rights.

Defendant's motion was orally amended without objection at a hearing on September 21, 2018. The CSLI evidence Brooks now challenges was obtained pursuant to the application granted by the undersigned magistrate judge pursuant

3

to 18 U.S.C. § 2703(d) (Exhibit 2).¹ Brooks asserts the government's acquisition of his CSLI pursuant to the Stored Communication Act (SCA) is a violation of his Fourth Amendment rights because he has a reasonable expectation of privacy in his CSLI, and the CSLI was acquired without a warrant.

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." Carpenter v. United States, 138 S. Ct. 2206 (2018). The purpose of this Amendment is to "safeguard the privacy and security of individuals against arbitrary invasions by government officials." Camara v. Municipal Court of City and County of San Francisco, 387 U.S. 523, 528 (1967). Historically, the Supreme Court has held that a person has no legitimate expectation of privacy in information he voluntarily turns over to third parties." United States v. Miller, 425 U.S. 435, 442–44 (1976); Smith v. Maryland, 442 U.S. 735, 743–44 (1979). "[W]hen an individual reveals private information to another, he assumes the risk that this confidant will reveal that information to the authorities, and if that occurs the Fourth Amendment does not prohibit governmental use of that information." United States v. Jacobsen, 466 U.S. 109, 117 (1984).

In recent years, the United States Supreme Court has considered privacy issues related to digital data, which "does not fit neatly under existing precedents." Carpenter 138 S.Ct. at 2214. Courts have consistently held that under the third-party doctrine, individuals lack a reasonable expectation of privacy in basic telephone records. See Smith, 442 U.S. at 745 (holding defendant did not have a

---

¹ The data the government intends to offer at trial was obtained pursuant to the federal order, not the state order. That discrepancy and misunderstanding was corrected at the hearing.

4

reasonable expectation of privacy in the phone numbers dialed); United States v. Clenney, 631 F.3d 658, 666 (4th Cir. 2011) (holding no privacy interest in basic subscriber information); United States v. Phibbs, 999 F.2d 1053, 1077 (6th Cir. 1993) (holding no privacy interest in telephone records).

In *Carpenter*, the United States Supreme Court held that due to the unique nature of cell phone location records, the fact that the information is held by a third party does not by itself overcome the user's claim to Fourth Amendment protection. Carpenter 138 U.S. at 2217. *Carpenter* held that an individual maintains a legitimate expectation of privacy in the record of his physical movements, as captured through CSLI. *Id.* As such, the Court held that the government must generally obtain a search warrant supported by probable cause before acquiring CSLI from a wireless carrier. Carpenter 138 U.S. at 2221. Ultimately, the Supreme Court concluded that an order issued under 18 U.S.C. § 2703(d) is not a permissible mechanism for accessing CSLI, thus, "[b]efore compelling a wireless carrier to turn over a subscriber's CSLI, the Government's obligation is a familiar one – get a warrant." Carpenter 138 U.S. at 2221.

The government argues that the procedures set forth in the SCA, 18 U.S.C. 2703(c), were followed, and the government had "good faith reliance on the constitutionality of the SCA at the time the CSLI was obtained by court order and prior to the Supreme Court's determination in *Carpenter*." (Filing No. 75 at CM/ECF p 2) Brooks argues that the CSLI was obtained by court order under § 2703(d), which is no longer appropriate, following the Carpenter decision. Further, he argues that the good faith exception, first recognized in United States v. Leon, 468 U.S. 897 (1984), applies when officers act in good faith reliance upon a *search warrant*, which must be supported by probable cause. By comparison, the officers in this case applied for a court order under 18 U.S.C. § 2703(d), which must be

5

supported by only "reasonable grounds to believe… information sought [is] relevant and material." Thus, he argues Leon is inapplicable to the CSLI obtained in this case.

In United States v. Leon, supra, the United States Supreme Court ruled that the Fourth Amendment exclusionary rule does not apply to evidence obtained by police officers who acted in objectively reasonable reliance upon a search warrant issued by a neutral magistrate judge, but where the warrant was ultimately found to be unsupported by probable cause. In Illinois v. Krull, 480 U.S. 340 (1987), the Supreme Court considered the question of whether an exception to the exclusionary rule, similar to Leon, should be recognized when officers act in objectively reasonable reliance upon a statute authorizing warrantless administrative searches, but where the statute is ultimately found to violate the Fourth Amendment. The Supreme Court concluded that where the officer relied, in objective good faith, on a statute that appeared legitimate and allowed a warrantless administrative search of respondents' business, the evidence obtained from that search is not subject to suppression.

Following Carpenter, which was decided on June 22, 2018, the Seventh Circuit Court of Appeals considered the issue now before the court: Does a good faith exception apply to evidence obtained pursuant to the SCA before the Carpenter decision was entered? In United States v. Curtis, 901 F.3d 846 (7th Cir. 2018), the Seventh Circuit acknowledged that Carpenter resolved the question of whether an SCA order obviates the need for the warrant, but it did not speak to what should happen next. Citing Illinois v. Krull, supra, the Seventh Circuit concluded that "evidence obtained in good-faith reliance on a statute later declared unconstitutional need not be excluded." *Id* at 2, Specifically, the court found that "even though it is now established that the Fourth Amendment requires a warrant

6

for the type of cell-phone data present here, exclusion of that information was not required because it was collected in good faith." United States v. Curtis, 901 F.3d 846 (7th Cir. 2018),.

Individuals, like Brooks, are now entitled to a reasonable expectation of privacy in CSLI data. But in this case, the government requested and collected CSLI data prior to the decision in Carpenter, and the government acted in accordance with the SCA. Thus, the CSLI in this case was obtained in good faith, and it need not be excluded. See Illinois v. Krull, supra.

2. Motion to Suppress Statements

On March 7, 2018, Brooks filed a Motion to Suppress Statements, specifically his statements to law enforcement on January 6, 2017 "made after invocation of his right to terminate questioning." (Filing No. 43 at CM/ECF p.1). He alleges that during the officer's questioning, he attempted to halt the interview, but his request was not honored. Id. He further alleges that "The failure of law enforcement officers to honor his right to halt questioning is a violation of his rights under Miranda and the Fifth Amendment to the United States Constitution and any such statement made in such violation should be suppressed." Id.

At the hearing on Brooks' motion to suppress, the government argued that Brooks waived his right to remain silent and his statements were voluntary. To establish a valid Miranda waiver, the government must show that the waiver was knowing, intelligent, and voluntary. U.S. v. Woods, 829 F.3d 675 (8th Cir. 2016). A waiver is "knowing and intelligent" if it is made with full awareness of both the nature of the right being abandoned and the consequences of abandoning the right, and a waiver is "voluntary" if it was a product of the suspect's free and

deliberate choice, and not the product of intimidation, coercion, or deception. Thai v. Mapes, 412 F. 3d 970, 977 (8th Cir. 2005).

The determination of whether a defendant has voluntarily waived his *Miranda* rights is "an extremely fact sensitive analysis." United States v. Nguyen, 608 F.3d 368, 374 (8th Cir. 2010) (citing United States v. Boyd, 180 F.3d 967, 977 (8th Cir. 1999)). The test for voluntariness is whether, "in light of the totality of circumstances, pressures exerted upon the suspect have overborn his will." United States v. Jorgensen, 871 F.2d 725, 729 (1989) (quoting Haynes v. Washington, 373 U.S. 503, 513–14 (1963)). Factors the court should examine include the details of the interrogation, including tactics used by the officer, and characteristics of the defendant. United States v. Wilson, 787 F.2d 375, 381 (8th Cir. 1986). "[T]wo key factors . . . are the conduct of the law enforcement officials and the capacity of the suspect to resist the pressure to confess." United States v. Klime, 99 F.3d 870, 879–80 (8th Cir. 1996).

The court considers "the defendant's statements as a whole to determine whether they indicate an unequivocal decision to invoke the right to remain silent." U.S. v. Adams, 820 F.3d 317 (8th Cir. 2016). To adequately invoke this right and effectively cut off questioning, a suspect must indicate a "clear, consistent expression of a desire to remain silent." Id. Citing United States v. Johnson, 56 F.3d 947, 955 (8th Cir. 1995). In *Adams*, the defendant said "Nah, I don't want to talk, man. I mean, I," and he proceeded to engage in an exchange with an FBI agent for an additional sixteen minutes. Under these facts, *Adams* held there was no clear, consistent expression of a desire to remain silent. A "[w]aiver of the right to remain silent 'can be clearly inferred from the actions and words of the person interrogated.'" Id. Citing North Carolina v. Butler, 99 S.Ct. 1755 (1979).

8

Brooks asserts that he made various attempts to end the interview by saying "that's all I have to say," "I have nothing else to talk about," and "I'm basically done talking and answering questions," and the questioning continued. Brooks claims that at the point where he said, "that's all I have to say" and "I have nothing else to say" his statements were no longer voluntary. (Filing No. 72-2 at CM/ECF p. 49.)

Brooks is an adult male. A transcript of the custodial interview shows that Investigator Chris Milisets read Brooks his rights and Brooks indicated that he understood and was willing to answer questions and/or make a statement. (Filing No. 72-2 at CM/ECF pp 3-4). During the interview, the investigators asked Brooks periodically if he needed anything and Brooks asked for and was provided tissues and a break to use the restroom. No one promised anything or threatened Brooks to secure his consent to respond to questions.

Throughout the interview, Brooks answered many questions with "that's all" or "that's all I know," "All I'm saying is," and other variations of that phrase. (Filing No. 72-2 at CM/ECF p. 7, 22, 26, 30, 38, 48, 49). However, he continued to give answers that were responsive to the investigators' questions and at times invited further questioning. For example, during a line of questioning regarding his co-defendant's statement, Brooks said "I'm saying I wasn't there. That's all I'm saying. Anything else…" (Filing No. 72-2 at CM/ECF p. 48). Later in the interview, he asked whether the investigator was done talking, and asked "Is there any more questions?" Filing No. 72-2 at CM/ECF p. 66). Upon review and consideration of the transcript as a whole, the court finds Brooks did not indicate a clear, consistent expression of his desire to remain silent until late in the interview, when he stated, "I'm basically done talking and answering questions." (Filing No. 72-2 at CM/ECF p. 69). Brooks' statement prior to that invocation were not obtained in violation of

his Miranda rights, and they were voluntarily made and not the product of an overborne will.

The government states it will not be offering any of Brooks' statements made after Brooks invoked his rights as part of its case in chief, and there is no basis for suppressing the statements prior to the moment. As such, Defendant's motion to suppress the statements the government may use at trial must be denied.

The court further notes that some questioning did occur after the invocation—after Brooks stated he was "basically done"—and finds these statements were knowingly and voluntarily made. Therefore, while inadmissible under Miranda's prophylactic rule, these statements could be used at trial for impeachment purposes.

   3.  Motion in Limine

On March 7, 2018, Brooks also filed a "Motion in Limine: Illicit Drugs." (Filing No. 45) He moved the court for an order prohibiting the government and its witnesses from introducing any evidence regarding his alleged or admitted illicit drug possession and/or use. Brooks' motion in limine states that during his interview by officers of the Lincoln Police Department, he was asked about and admitted to occasional drug use. He argues that he is not charged with any drug-related offense, and any information regarding drug possession or use is irrelevant and has no probative value. (Filing No. 45)

The parties addressed this issue at the hearing on September 21, 2018. However, the undersigned magistrate judge will not decide or recommend what evidence will be excluded at trial. Absent an agreement by the parties, such issues

will be decided immediately before or during the trial by the presiding district judge.

IT THEREFORE HEREBY IS RECOMMENDED to the Honorable John M. Gerrard, United States District Judge, pursuant to 28 U.S.C. § 636(b), that the motions to suppress filed by the defendant (Filing No. 43 & Filing No. 68) be denied in their entirety.

The defendant is notified that failing to file an objection to this recommendation as provided in the local rules of this court may be held to be a waiver of any right to appeal the court's adoption of the recommendation.

IT IS ORDERED that the jury trial of this case is set to commence before John M. Gerrard, United States District Judge, in Courtroom 1, United States Courthouse, Lincoln, Nebraska, at **9:00 a.m. on October 29, 2018** or as soon thereafter as the case may be called, for a duration of five (5) trial days. Jury selection will be held at the commencement of trial.

September 27, 2018.

BY THE COURT:

*s/ Cheryl R. Zwart*
United States Magistrate Judge